Brock v. Kyryk, 2026 NCBC 62.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV005368-100

DOUGLAS M. BROCK; LORRAINE M. CONNOLLY; and SBM REALTY, LLC,

Plaintiffs,

v.

STEPHEN KYRYK; MILTON MCCLURKAN, JR.; JANICE JOHNSTON; LINDA BARBER; SENTA M. TAYLOR; JAMES A. SCHORR, individually and in their official capacities, and THE SETTINGS OF BLACK MOUNTAIN ASSOCIATION, INC.,

Defendants.

**ORDER AND OPINION
ON DEFENDANTS' MOTION TO
DISMISS**

1. This matter is before the Court on Defendants' Rule 12(b)(6) motion to dismiss this action for failure to state a claim upon which relief can be granted. (ECF No. 13).

2. Plaintiffs did not file a response to the motion or Defendants' briefing, instead missing the deadline to do so and then purporting to voluntarily dismiss the action without the Court's leave. (ECF No. 21). The Court struck Plaintiffs' attempted notice of voluntary dismissal of this putative derivative action as improper on 5 February 2026, reopening the case and therefore making the motion to dismiss ripe for decision. (ECF No. 28); *see also* N.C. Gen. Stat. § 55A-7-40.[1]

---

[1] Inasmuch as their purported notice of voluntary dismissal was filed after the deadline to respond to the motion to dismiss, Plaintiffs had rested with respect to the motion and, as a result, also were not entitled to voluntarily dismiss pending causes of action while the motion was pending. *See, e.g., Troy v. Tucker*, 126 N.C. App. 213, 216 (1997) (determining voluntary

3.     In the exercise of the Court's discretion and pursuant to Rule 7.4 of the Business Court Rules, the Court elects to resolve the motion on the briefing and without a hearing.

4.     Having considered the complaint and the written arguments of Defendants, the Court hereby **GRANTS** Defendants' motion to dismiss as set forth below.

> *Allen Stahl & Kilbourne, P.A., by Robert E. Dungan, Robert Carpenter, Tiffany F. Yates, and Andrew Wright for Plaintiffs Douglas M. Brock, Lorraine M. Connolly, and SBM Realty, LLC[2]*
>
> *McAngus Goudelock & Courie, PLLC, by John E. Spainhour, for Defendants Stephen Kyryk; Milton McClurkan, Jr., Janice Johnston, Linda Barber, Senta M. Taylor, and James A. Schorr, individually and in their official capacities, and The Settings of Black Mountain Association, Inc.*

Houston, Judge.

## I.     BACKGROUND

5.     The Court does not make findings of fact when resolving a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the complaint's factual allegations that are most relevant to the Court's decision and accepts the well-pleaded allegations as true for purposes of this Order and Opinion.

---

dismissal was unauthorized under Rule 41 where plaintiff had rested at summary judgment stage); *Maurice v. Hatterasman Motel Corp.*, 38 N.C. App. 588, 591 (1978) (same); *BB&T Boli Plan Trust v. Mass. Mut. Life Ins. Co.*, 2016 NCBC LEXIS 36, at *20 (N.C. Super. Ct. Apr. 29, 2016) (recognizing that this "same principle applies to other pending dispositive orders where the plaintiff has in effect 'rested his case,'" including Rule 12(b)(6) motions).

[2] Attorneys Dungan, Carpenter, Yates, and Wright moved to withdraw after the motions addressed in this order had been filed, briefed, and became ripe. (ECF No. 37). The Court granted that motion on 4 March 2026. (ECF No. 40).

6. Plaintiffs Douglas M. Brock, Lorraine M. Connolly, and SBM Realty, LLC are all property owners in the planned development known as The Settings of Black Mountain (the "**Development**"). (ECF No. 3, ¶¶ 1–3).

7. The Development contains two hundred and seventy-seven lots, consisting of both single-family residences and undeveloped lots. Most of the lots are currently undeveloped. (ECF No. 3, ¶ 13). There are also common areas, such as "roads, greenways, and other improvements" within the Development. (ECF No. 3, ¶ 13).

8. Of the lots in the Development, Brock owns three undeveloped lots, while SBM owns twenty undeveloped lots. (ECF No. 3, ¶¶ 1, 3). Connolly owns one developed lot. (ECF No. 3, ¶ 2).

9. All Plaintiffs are members of The Settings of Black Mountain Association, Inc., the property owners' association for the Development (the "**Association**"). (ECF No. 3, ¶¶ 1–4).

10. Defendants Stephen Kyryk, Milton McClurkan, Jr., Janice Johnston, Linda Barber, Senta M. Taylor, and James A. Schorr are all lot owners and members of the Association, as well as members of the Association's Board of Directors. (ECF No. 3, ¶¶ 5–10).

11. Pursuant to the Declaration of Covenants, Conditions and Restrictions for The Settings of Black Mountain applicable to the Association ("**Declaration**"), each lot owner is entitled to one vote per lot owned with respect to matters on which members of the Association vote. (ECF No. 3, ¶ 13). The Association is generally

"operated and administered through" its Board of Directors, the members of which are elected. (ECF No. 3, ¶ 14).

12. As it did with many parts of western North Carolina, in late September 2024, Hurricane Helene caused "substantial damage to the common areas" of the Development, "including to roads and common area infrastructure." (ECF No. 3, ¶ 15).

13. In response to the damage, the Board held a meeting on 1 March 2025 addressing the estimated costs of repair, which were calculated at $2.7 million. (ECF No. 3, ¶ 16). The Board indicated that funding "was to come from a combination of FEMA grants and a special assessment levied on the members" of the Association, with the special assessment estimated to be $1.45 million. (ECF No. 3, ¶ 16).

14. Under the Declaration, the Board "may levy special assessments from time to time to cover unbudgeted expenses or expenses in excess of those budgeted," with any special assessment to "become effective unless disapproved at a meeting by members holding a majority of the total votes." (ECF No. 3, ¶ 19). The Declaration also provides that there is "no obligation to call a meeting for the purpose of considering any Special Assessment except on petition of the Members as provided for in the By-Laws, which petition must be presented to the Board within twenty (20) Days after delivery of the notice of such Special Assessment." (ECF No. 3, ¶ 20).

15. In May 2025, Connolly requested a list of the Association's members, along with their addresses and emails. Though the Association provided names and mailing

addresses, it did not provide email addresses until 6 August 2025. (ECF No. 3, ¶¶ 21–22, 29).

16. In July 2025, the Association—through its property management company, First Service Residential—notified Association members that the final special assessment would be $3,970.00 per lot, an amount that factored in increased grant amounts from FEMA. (ECF No. 3, ¶¶ 14, 23–24).

17. On 28 July 2025, Plaintiffs and other lot owners submitted a petition for a special meeting, seeking a vote to disapprove the special assessment. (ECF No. 3, ¶ 25).

18. On 31 July 2025, the Association notified its members of a special meeting to take place on 10 August 2025 for the purpose of "hav[ing] a vote on the petition with respect to disapproval of the special assessment" and permitted members to submit proxy votes. (ECF No. 3, ¶ 26). The notice also contained the following language:

> **PLEASE NOTE**: The Small Business Administration (SBA) has recently decided it does not wish to require our clubhouse and other common properties as collateral. Instead, it will require a resolution from the community regarding its willingness to be assessed as needed to pay back the loan. If the disapproval vote passes at the special meeting, the SBA has indicated it will reject the HOA's loan application.

(ECF No. 3, ¶ 27) (emphasis in original).

19. Plaintiffs assert that "Defendants sent out notice of the special meeting to Association members including the Plaintiffs and intended that the Plaintiffs as well as other members would rely on the information in the notice." (ECF No. 3, ¶ 46).

20. Though Plaintiffs assert that "Defendant directors knew or should have known that the vote at the special meeting regarding a special assessment levied by the Board that was proposed solely by the Board had nothing to do with the SBA loan application or approval" and that they "knew or should have known that this statement was false and was included in the notice to intimidate, threaten, and to discourage owners from voting against the special assessment," (ECF No. 3, ¶ 28), the complaint lacks any facts to support these conclusory allegations.

21. Connolly subsequently determined that an unspecified "number of members" did not receive notice of the 10 August 2025 meeting and therefore requested that the meeting be rescheduled, which the Board declined to do. (ECF No. 3, ¶¶ 29–30).

22. The scheduled meeting proceeded on 10 August 2025. After a member moved to delay the hearing for twenty days, the Board called a vote during which members were permitted to vote only by "raising hands," with Plaintiffs permitted to cast only one vote each, regardless of the number of lots they own and regardless of certain proxy votes. Plaintiffs contend that this was wrongful. (ECF No. 3, ¶ 35).

23. As a result, the motion to postpone the meeting failed, and the meeting proceeded. (ECF No. 3, ¶ 35). In turn, the vote on disapproval of the special assessment also failed, and the Board announced to members that the special assessment would proceed as noticed. (ECF No. 3, ¶¶ 37–38).

24. On 12 August 2025, plaintiffs Brock and SBM Realty, as well as another non-party lot owner, sent a letter to the Board demanding immediate rescission (no

later than 13 August 2025) of the announcement that the disapproval vote had failed, an explanation for voting failures, the announcement of a new special meeting date and time, a hold on billing of the special assessment, and information concerning the earlier statements regarding the SBA's purported threat to reject the Association's loan application. (ECF No. 3, ¶ 39).

25. Defendants refused the demands and proceeded with the special assessment. (ECF No. 3, ¶ 40).

26. Plaintiffs then filed a verified complaint on 2 September 2025, asserting putative causes of action for (i) breach of fiduciary duty, (ii) negligent misrepresentation, and (iii) a preliminary injunction. (*See generally* ECF No. 3, ¶¶ 41–54).

27. In their complaint, Plaintiffs expressly allege that "[t]his action is brought in accordance with N.C.G.S. § 55A-7-40" as a derivative action, (ECF No. 3, ¶ 11), and, in addition to other relief requested, Plaintiffs request that the Court "[a]ward attorneys fees and costs to the Plaintiffs in accordance with N.C.GS. § 55A-7-40(e)," (ECF No. 3 at 14, ¶ 4 (prayer for relief)); *see also* N.C. Gen. Stat. § 55A-7-40 (governing "Derivative Proceedings").

28. Nonetheless, despite presenting the action as a derivative action, Plaintiffs also assert that the alleged harms caused by Defendants (and the duties allegedly owed by Defendants) were to Plaintiffs rather than the Association. (*See, e.g.*, ECF No. 3, ¶¶ 42–43 (asserting fiduciary duty was owed to "the plaintiffs and other

members of the Association"); *see also* ECF No. 3 at 13–14 ("Defendants made negligent misrepresentations . . . [that] harmed the Plaintiffs.")).

## II.   ANALYSIS

29.   When resolving a Rule 12(b)(6) motion, the Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted); *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991)).

30.   The Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).

31.   Dismissal on a Rule 12(b)(6) motion is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin*, 371 N.C. at 615 (citations omitted).

32.   Defendants argue that Plaintiffs do not have, and have not pleaded facts demonstrating that they have, standing to file a derivative cause of action under N.C. Gen. Stat. § 55A-7-40, (ECF No. 14 at 6), and further assert that Plaintiffs have otherwise failed to state a claim upon which relief can be granted. The Court agrees.

### a. **Standing for a Derivative Action**

33.     Although standing generally invokes Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, "the absence of standing can be raised in a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)." *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 649 (2022) (citing *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337 (2000), and *Teague v. Bayer AG*, 195 N.C. App. 18, 22 (2009)).

34.     "Standing is required in order to maintain subject matter jurisdiction." *Drum v. Drum*, 284 N.C. App. 272, 275 (2022); *see also Cmty. Success Initiative v. Moore*, 384 N.C. 194, 205 (2023); *see generally United Daughters*, 383 N.C. at 649; *Tiller v. Phillips*, 2025 NCBC LEXIS 141, at \*24 (N.C. Super. Ct. Oct. 15, 2025).

35.     "As the party invoking jurisdiction, the plaintiff also bears the burden to prove standing." *Tiller*, 2025 NCBC LEXIS 141, at \*24 (citing *Blinson v. State*, 186 N.C. App. 328, 333 (2007)).

36.     "By its very nature, a derivative action requires that the shareholder bringing such an action have proper standing to bring the action." *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 203 (2015) (quoting *Robbins v. Tweetsie R.R., Inc.*, 126 N.C. App. 572, 577 (1997)).

37.     By definition, "[a] derivative proceeding is a civil action brought by a shareholder in the right of a corporation, while an individual action is one a shareholder brings to enforce a right which belongs to him personally." *Anderson,* 241 N.C. App. at 200 (internal quotations omitted). "[T]he action is brought in the right

of the corporation and recovery thereunder accrues to the benefit of the corporation and not to the nominal plaintiffs who bring the action derivatively." *Swenson v. Thibaut*, 39 N.C. App. 77, 98 (1978).

38. Further, to state a claim for a derivative action under N.C. Gen. Stat. § 55A-7-40(b), "[t]he complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." N.C. Gen. Stat. § 55A-7-40(b).

39. As Defendants argue, "[w]ithout paragraph 11 or item 5 in the prayer for relief [both of which reference N.C. Gen. Stat. § 55A-7-40], one would not know Plaintiffs were purporting to state a claim in the right of the Association or proceeding in a derivative action." (ECF No. 14 at 6).

40. Notwithstanding their allegations that the action is brought pursuant to N.C. Gen. Stat. § 55A-7-40, Plaintiffs fail to allege any facts supporting the contention that any of their three causes of action are brought derivatively on behalf of the Association or otherwise for its benefit. Indeed, the complaint fails to identify any putative harm to the Association, as opposed to Plaintiffs, and Plaintiffs seek no substantive recovery for the Association. (*See generally* ECF No. 3).

41. Accordingly, to the extent that Plaintiffs purport to assert any of their three causes of action derivatively or otherwise on behalf of the Association, they have failed to state a claim upon which relief can be granted, and the Court therefore **DISMISSES without prejudice** those causes of action. *Stewart v. Kopp*, 118 N.C.

App. 161, 165 (1995) ("[A] member's derivative action [was not] the appropriate cause of action, since plaintiff alleged no injury to the Association by the Board's action and was not seeking to recover on behalf of the Association.").

### b. **Failure to State a Claim**

42. To the extent that Plaintiffs attempt to assert causes of action on behalf of themselves individually, as opposed to derivatively on behalf of the Association, (i) the complaint is unclear as to whether Plaintiffs *intend* to assert individualized causes of action and (ii) any such causes of action fail regardless.[3] The Court briefly addresses each in turn.

#### i. Breach of Fiduciary Duty

43. As to Plaintiffs' cause of action against the board-member Defendants for breach of fiduciary duty, as the Business Court has recognized, "the North Carolina Nonprofit Corporation Act requires a director to act in the best interests of the

---

[3] As explained above and in the Court's Order Striking Plaintiffs' Notice of Voluntary Dismissal, Plaintiffs frame this case as a derivative action brought pursuant to N.C. Gen. Stat. § 55A-7-40, and the Court construes it as a putative derivative action accordingly. (ECF No. 28; ECF No. 3, ¶ 11; ECF No. 3 at 14, ¶ 4). Because their allegations concern purported harm to Plaintiffs individually, however, it appears that Plaintiffs do not themselves know or understand the relief they seek. Defendants' briefing is of little assistance in analyzing these issues, and the Court also does not have the potential benefit of briefing from Plaintiffs. Nevertheless, the Court has an ongoing duty to evaluate the causes of action pending before it and to evaluate whether they state claims upon which relief can be granted. *See Maola Ice Cream Co. v. Maola Milk & Ice Cream Co.*, 238 N.C. 317, 324 (1953) ("If the cause of action, as stated by the plaintiff, is inherently bad, why permit him to proceed further in the case, for if he proves everything that he alleges he must eventually fail in the action." (citations omitted)); *Tuwamo v. Tuwamo*, 248 N.C. App. 441, 445 (2016) ("'[C]ourts have continuing power to supervise their jurisdiction over the subject matter before them, including the power to dismiss *ex mero motu*.'" (quoting *Narron v. Union Camp Corp.*, 81 N.C. App. 263, 267 (1986)). In the exercise of judicial discretion, the Court addresses the apparent individual causes of action as well. The ultimate result—dismissal without prejudice—is the relief originally sought by Plaintiffs for all causes of action in the case.

nonprofit *corporation*, not its members." *Port Trinitie Homeowners Ass'n, Inc. v. Port Trinitie Ass'n, Inc.*, 2025 NCBC LEXIS 100, at *22 (N.C. Super. Ct. Aug. 7, 2025) (emphasis in original) (quoting N.C. Gen. Stat. § 55A-8-30(a)(1)−(3); *Vill. at Motts Landing Homeowners' Ass'n v. Aftew Props.*, 2023 NCBC LEXIS 100, at *8 (N.C. Super. Ct. Aug. 14, 2023)).

44. Similarly, Plaintiffs have failed to plead any facts suggesting that the Association itself owes a fiduciary duty to Plaintiffs. (ECF No. 3, ¶¶ 41–44 (containing only conclusory allegations of the existence of a fiduciary duty)); *see Port Trinitie*, 2025 NCBC LEXIS 100, at *22 (explaining that the relationship between members and a property owners' association is generally contractual, and not fiduciary, in nature absent facts demonstrating a de facto fiduciary relationship).

45. Thus, Plaintiffs' cause of action against Defendants for breach of fiduciary duty fails and is appropriately dismissed on this basis. *Port Trinitie*, 2025 NCBC LEXIS 100, at *22; *cf. Green v. Freeman*, 367 N.C. 136, 141 (2013) (explaining that, under the analogous Business Corporation Act, "[t]he General Assembly has expressly indicated its intent 'to avoid an interpretation [of N.C.G.S. § 55–8–30] . . . that would give shareholders a direct right of action on claims that should be asserted derivatively' and to avoid giving creditors a generalized fiduciary claim." (citation omitted)).

46. Having not responded to the motion to dismiss, Plaintiffs do not contend that any exception to this general rule exists and have thus abandoned any such contention. *See Green*, 367 N.C. at 144 (addressing exceptions to this general rule).

47. Similarly, as in *Port Trinitie*, "even if there were fiduciary duties that ran [from the individual board-member Defendants] to Plaintiffs, additional allegations and evidence would be necessary to overcome the hurdle presented by the business judgment rule." *Port Trinitie*, 2025 NCBC LEXIS 100, at *23 (quoting *Winters v. First Union Corp.*, 2001 NCBC LEXIS 5, at *10 (N.C. Super. Ct. July 12, 2001)).

48. Accordingly, to the extent Plaintiffs' first cause of action for breach of fiduciary duty is asserted as an individual cause of action rather than a putative derivative cause of action, Defendants' motion is **GRANTED**, and Plaintiffs' cause of action for breach of fiduciary duty is **DISMISSED without prejudice**.[4]

### ii. Negligent Misrepresentation

49. Next, as to their cause of action for negligent misrepresentation, Plaintiffs again fail to plead facts stating a claim upon which relief can be granted.

50. To state a claim for negligent misrepresentation, a plaintiff must allege that he "justifiably relie[d] to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988); *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 33 (2003); *Castillo v. RRD Fin., LLC*, 2025 NCBC LEXIS 114, at *17 (N.C. Super. Ct. Sept. 3, 2025).

---

[4] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013) (citation omitted). With respect to each of the causes of action addressed by this Order and Opinion, the Court has carefully considered whether dismissal with or without prejudice is appropriate and has exercised its discretion in dismissing the causes of action.

51. The complaint must allege negligent misrepresentation with particularity by setting forth the "time, place, speaker, [and] specific contents of the alleged misrepresentation." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 266 (2023); *Castillo*, 2025 NCBC LEXIS 114, at *17.

52. Plaintiffs contend that the Board's 31 July 2025 notice of the 10 August 2025 meeting contained a negligent misrepresentation because the statement concerning "the SBA and any connection to a vote to disapprove the Board's special assessment was false," and they allege in vague and conclusory fashion that "[r]eliance by members on defendants' false information has caused damage to the Plaintiffs." (ECF No. 3, ¶¶ 45–49).

53. Plaintiffs plead no facts supporting this cause of action.

54. First, Plaintiffs fail to plead facts demonstrating that any member, whether Plaintiffs or otherwise, actually relied on the statement. Rather, in their complaint, Plaintiffs allege only that Defendants included the statement in an *attempt* "to discourage owners from voting against the special assessment." (ECF No. 3, ¶ 28). Plaintiffs' vague and conclusory allegation of "[r]eliance by [unspecified] members on defendants' false information" is unsupported by factual allegations that any specific property owner ultimately relied (reasonably or not) on the statement in any way, whether by failing to vote or otherwise participate in the meeting based on that language in the notice. (ECF No. 3, ¶ 49); *see Raritan River Steel*, 322 N.C. at 206−07 (requiring reliance as an element of negligent misrepresentation); *Oak Grove Techs.,*

*LLC v. Seventh Dimension, LLC,* 2025 NCBC LEXIS 111, at *33 (N.C. Super. Ct. Aug. 22, 2025).

55. Second, even if they alleged reasonable or justifiable reliance, Plaintiffs plead no facts indicating that the reliance was reasonable or that any parties allegedly relying on the statement could not have made a reasonable inquiry into the purported misrepresentation. *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 454 (2015) ("[T]o establish justifiable reliance a plaintiff must sufficiently allege that he made a reasonable inquiry into the misrepresentation and allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence."); *Oak Grove*, 2025 NCBC LEXIS 111, at *33–34.[5]

56. Third, Plaintiffs fail to plead nonconclusory facts demonstrating that they suffered actual harm as a result of Defendants' statement. While Plaintiffs allege damages in a conclusory fashion, Plaintiffs' theory of damages is that they were harmed by the failure of the disapproval vote. (*See generally* ECF No. 3). Plaintiffs do not, however, allege facts demonstrating that the disapproval vote ultimately would have prevailed absent the statement in the notice (i.e., that the individuals who did not vote would have constituted a majority of the eligible votes or that they would have voted to disapprove the special assessment). Rather, Plaintiffs allege only that

---

[5] Despite no cause of action for fraud, Plaintiffs' allegations also suggest that the purported misrepresentation was intentional, rather than negligent, and that the language intentionally "was included in the notice to intimidate, threaten, and to discourage owners from voting against the special assessment[.]" (ECF No. 3, ¶ 28); *see Castillo*, 2025 NCBC LEXIS 114, at *19–20.

the *postponement* vote would have succeeded, thereby merely delaying the disapproval vote to a later date. (ECF No. 3, ¶¶ 35–37).

57. Each of these failures is an adequate independent basis on which to dismiss this cause of action.

58. Accordingly, to the extent Plaintiffs' second cause of action for negligent misrepresentation is asserted as an individual cause of action rather than a putative derivative cause of action, Defendants' motion is **GRANTED**, and Plaintiffs' cause of action for negligent misrepresentation is **DISMISSED without prejudice**.

### iii. Injunctive Relief

59. Finally, Plaintiffs assert a putative cause of action for injunctive relief. (ECF No. 3, ¶¶ 50–54). That putative cause of action fails as a matter of law.

60. Specifically, "[i]nasmuch as [Plaintiffs] purport[] to assert 'claims' for injunctive relief, . . . such 'claims' inherently fail as a matter of law because, as this Court and others have repeatedly recognized, they are not independent causes of action or claims." *Evergreen Builder Sols., LLC v. Taylor*, 2025 NCBC LEXIS 174, at *31–32 (N.C. Super. Ct. Dec. 29, 2025) (citations omitted); *see also Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005) ("A preliminary injunction is an ancillary remedy, not an independent cause of action."); *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *18 (N.C. Super. Ct. July 26, 2018) ("[I]njunctions are remedies, not independent causes of action." (citation omitted)).

61. Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to the purported cause of action for injunctive relief, which the Court **DISMISSES without prejudice**.

### III. CONCLUSION

62. Therefore, the Court **ORDERS** that Defendants' motion to dismiss is **GRANTED**, and Plaintiffs' complaint is **DISMISSED** as set forth above.

SO ORDERED, this 8th day of July 2026.

/s/ Matthew T. Houston
Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases